UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
GERALDINE DONADIO,

        Plaintiff,     **OPINION & ORDER**

  v.           03-CV-2837

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
------------------------------------X
FEUERSTEIN, J.

I. Introduction

Geraldine Donadio ("Donadio" or "plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's ("the Commissioner") decision that plaintiff is not entitled to disability benefits as provided by Title II of the Social Security Act ("the Act"). Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

II. Background

 A. Procedural History

On October 5, 1998, plaintiff filed an application for disability benefits with the Social Security Administration ("SSA") alleging an inability to work due to herniated discs in her neck. (Tr. 47-49). The application was denied, and plaintiff requested a hearing which was held before Administrative Law Judge Richard Karpe ("the ALJ") on January 13, 2000. The ALJ issued a

decision on February 4, 2000 which denied the claim and found that plaintiff could perform past light work. (Tr. 7-13). Plaintiff timely requested a review of the ALJ's decision, which was denied by the Appeals Council on April 2, 2003. (Tr. 3-6).

B.     Facts

1. Plaintiff's Testimony

Plaintiff was born on November 7, 1957 and was forty-two (42) years old at the time of the Commissioner's decision. (Tr. 7-13, 47). She has seven (7) years of formal schooling and vocational training as a nurse's aide, and has worked as a nursing assistant, bartender, and ranch hand. (Tr. 22-24, 53-58).

On August 8, 1997, plaintiff injured her neck, back, arms, and left leg in a work-related accident. (Tr. 52). Plaintiff testified that after the accident, she performed a light duty assignment from August 10, 1997 to October 16, 1997. (Tr. 106, 115). During this period, she frequently went home early and missed several days of work due to pain and other difficulties resulting from her injury. (Tr. 106).

Plaintiff further testified that she has a tendency to drop objects and experiences tremors if she writes for longer than ten (10) minutes. (Tr. 31-32). According to plaintiff, although physical therapy, medication, and epidurals temporarily ameliorate her symptoms, the relief provided by these remedies is ephemeral. (Tr. 26, 28, 133). Plaintiff also stated that she needs to use both hands to lift a gallon of milk. (Tr. 32). She can sit for twenty (20) minutes, stand for thirty (30) minutes, and walk for twenty (20) minutes. (Tr. 32-33). Plaintiff further noted that she has to lay down for two (2) to three (3) hours per day. (Tr. 33). While plaintiff is able to conduct gardening tasks and care for her personal needs, household chores are done by family

members. (Tr. 63, 67, 202).

2. Medical Evidence

According to the records of the Wyoming Medical Center, although plaintiff complained of a sore neck, she did not experience any tenderness, numbness, weakness, or tingling in that area. (Tr. 78). Plaintiff was examined by Dr. Chris Moser, who diagnosed neck pain secondary to muscle spasm and restricted plaintiff to light duty. (Tr. 78). After being referred to the Community Family Health Center, plaintiff was examined by Timothy Frary ("Frary"), a certified physician's assistant. (Tr. 81-85). Frary's evaluation, conducted on August 25, 1997, noted that plaintiff exhibited a muscle/ligament strain of the cervical spine with a developing trigger point in the upper right rhomboid. (Tr. 84). Frary's follow-up examinations on September 8, 1997 and September 15, 1997 revealed a decreased range in motion in flexion and rotation and increased stiffness and tenderness across the shoulder blades, respectively. (Tr. 81, 83).

On September 24, 1997, plaintiff was examined by Dr. David Allerheiligen of Occupational Health Management. (Tr. 92). Dr. Allerheiligen opined that some osteoarthritic spurring may have been present in plaintiff's cervical spine and indicated that she could continue on light duty. (Tr. 92-93). On October 1, 1997, Dr. Allerheiligen re-examined plaintiff, who complained of discomfort on the right side of her neck and numbness in her arms. (Tr. 90-91). Dr. Allerheiligen reported that degenerative changes were found by an MRI and continued plaintiff's light duty restriction. (Tr. 90-91).

Plaintiff was subsequently examined by Dr. Lawrence A. Jenkins, who noted that the MRI revealed a right-side disc herniation at C4-C5 with some encroachment and hypertrophic spurring at C5-C6 and C6-C7. (Tr. 107). Dr. Jenkins diagnosed plaintiff with a C4-C5 disc

3

herniation with degenerative cervical disc disease. (Tr. 107). A CT scan on November 15, 1997 suggested a disc herniation at C4-C5, bilateral spur formation at C5-C6 and C6-C7, degenerative changes at C4 and C6, and bony neural forminal encroachment bilaterally at C5-C6 and on the left side at C6-C7. (Tr. 187). Dr. Jenkins's December 10, 1997 examination revealed significant restrictions in extension and flexion but that plaintiff's rotation had markedly improved. (Tr. 101). A February 13, 1998 discogram, or radiograph of intervertebral discs, revealed a small bulge at the C4-C5 level that indented the vertral sac, degenerative changes at C5-C6, and left foraminal narrowing at C6-C7. (Tr. 183-85, 188-89, 191-94). Dr. Jenkins recommended that plaintiff undergo acupuncture treatment, but the procedure was not approved by the Wyoming Workers' Compensation Division. (Tr. 94-95, 97, 264).

On March 5, 1998, plaintiff was examined by consultative neurologist Dr. John Viola. (Tr. 197). Dr. Viola noted that plaintiff had markedly limited flexion and extension as well as restricted lateral rotation. (Tr. 197). However, plaintiff had full bilateral strength in the upper extremities, normoactive reflexes in the lower extremities, and normal toe-heel walking. (Tr. 198). Upon re-evaluating plaintiff on March 11, 1998, Dr. Viola suspected that the significant degeneration at the C4-C5, C5-C6, and C6-C7 discs were causing the majority of plaintiff's symptoms and recommended vocational rehabilitation to supplement plaintiff's physical therapy. (Tr. 195).

On March 28, 1998, plaintiff was examined by Wyoming Division of Workers' Safety and Compensation neurologist Dr. Nathaniel Nord. (Tr. 199-204). Dr. Nord found that plaintiff had restricted motion in her cervical spine and tenderness in the spinal area, but that there was no evidence of cervical radiculopathy. (Tr. 203). Based upon the American Medical Association

Guides to the Evaluation of Permanent Impairment, Dr. Nord noted that plaintiff's cervical condition carried "a 5% impairment of the whole person." (Tr. 203). Dr. Nord concluded that plaintiff could "continue nursing aide work activities, provided that she remains cautious in her approach to patient management and seeks assistance when it is prudent to do so." (Tr. 203).

On June 2, 1998, plaintiff was examined by rheumatologist Dr. Anne MacGuire, who diagnosed mild cervical strain and "rated her a 5% whole person impairment for her injury ... ." (Tr. 208). Dr. MacGuire concluded that plaintiff was capable of returning to her nursing aide position provided that she did not lift more than thirty-five (35) pounds. (Tr. 208).

III. Legal Standard

A. Standard of Review

A district court's review of the denial of social security benefits is confined to a determination of whether there is "substantial evidence" to support the Commissioner's decision. 42 U.S. C. § 405(g) ("The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive ..."); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("We conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."). Therefore, even if the district court might have ruled differently were it to have made the initial determination, the court must affirm the Commissioner's decision if it is supported by substantial evidence. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). "The Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion." Marcus v. Califano, 615 F.2d 23,

29 (2d Cir.1979); see also Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988).

In this context, substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "In determining whether substantial evidence supports a finding of the [Commissioner], the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

However, the "substantial evidence" test applies only to review of the Commissioner's factual determinations. This standard is irrelevant to the Commissioner's legal conclusions, or to his or her compliance with applicable procedures mandated by statute or regulation, which are reviewed *de novo*. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). As noted in Jones v. Barnhart:

> administrative decisions regarding claimants' eligibility for disability benefits have proven surprisingly vulnerable to judicial reversal. This vulnerability results primarily from the creation by the Commissioner, and the enforcement by the courts, of a variety of procedural obligations to which ALJs must scrupulously adhere. Failure to do so is treated as 'legal error' permitting reversal of the ALJ's decision ... [A] district court reviewing a benefits denial may not simply accept the administrative determination because a cursory review of the record reveals plausible testimony or documentary evidence or expert opinion that supports the administrative determination. Rather, the record must be carefully developed and evaluated to determine whether the Commissioner fully complied with all the relevant regulations.

No. 00-9584, 2002 U.S. Dist. LEXIS 7073, at *9, *14 (S.D.N.Y. Apr. 22, 2002).

When deciding whether the SSA's denial of disability benefits is supported by substantial evidence, the Court must be satisfied that claimant has had "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (quoting Gold v. Secretary of Health, Educ. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972)). In light of the non-adversarial nature of benefits proceedings, the ALJ must affirmatively develop the record. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996).

B.  Determining Disability

Title II of the Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A) (2000). An individual may be determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... ." Id. § 423(d)(2)(A).

SSA regulations establish a five-step sequential analysis by which the Commissioner is required to evaluate a claim for disability benefits. Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); 20 C.F.R. § 404.1520 (2004). First, the Commissioner must determine whether the claimant is doing substantial gainful work. 20 C.F.R. § 404.1520(b). Second, if the claimant is not doing substantial gainful work, the Commissioner must then determine whether he or she has a "severe impairment." Id. § 404.1520(c). Third, if a severe impairment exists, the

Commissioner must next consider medical evidence to determine if the impairment meets or equals criteria of an impairment listed in Appendix I of the regulations. Id. § 404.1520(d). Fourth, if the claimant does not have a listed impairment, the Commission must analyze whether the impairment prevents the claimant from doing his or her past work. Id. § 404.1520(e). Finally, if the claimant cannot perform past work, the Commissioner must determine whether the impairment prevents him or her from doing any other work. Id. § 404.1520(f). If so, the Commissioner must find the claimant disabled. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000); Williams v. Apfel, 204 F.3d 48, 49 (2d Cir. 1999).

The claimant bears the burden of proof on the first four steps of the aforementioned analysis. However, once the claimant has met his or her burden, the Commissioner then has the burden of proving that the claimant still retains "a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). The Commissioner's burden at the fifth step is usually determined "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." Id. Taking into account the claimant's residual functional capacity, age, education, and work experience, the grids indicate whether the claimant is able to engage in any substantial gainful work existing in the national economy. Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999).

IV. Analysis

    A. The Commissioner's Findings

In his decision, the ALJ found that plaintiff: (1) had not engaged in substantial gainful

activity since the alleged onset of disability; (2) was "severely impaired" by degenerative disc disease; (3) did not have an impairment or combination of impairments listed in or equivalent to those listed in Appendix 1, Subpart P; (4) was able to perform her past work as a nurse's aide; and (5) had the residual functional capacity to perform light work. (Tr. 12-13).

B.  Objections to the Commissioner's Decision

Plaintiff claims that the ALJ failed to: (1) fully develop the record; (2) adequately assess plaintiff's credibility; and (3) address plaintiff's non-exertional impairment.

C.  The ALJ's Duty to Adequately Develop the Record

When deciding whether the SSA's denial of disability benefits is supported by substantial evidence, the Court must be satisfied that the claimant has had "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." Echevarria v. Secretary of Health Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (quoting Gold v. Secretary of Health, Educ. Welfare, 463 F.2d 38, 43 (2d Cir. 1972)). In light of the non-adversarial nature of benefits proceedings, the ALJ must affirmatively develop the record. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996).

Specifically, plaintiff alleges that the ALJ failed to address evidence that supported the disability claim or explain why such evidence was insufficient to establish disability. In his decision, the ALJ did not make any reference to Dr. Jenkins's diagnoses, which was part of Exhibit 6F. In failing to do so, the ALJ did not comply with the appropriate procedure for assessing the opinion of medical sources. According to the Regulations, "Regardless of its source, [the SSA] will evaluate every medical opinion [it] receives." 20 C.F.R. § 404.1527(d). The ALJ simply ignored or overlooked Dr. Jenkins's diagnoses, which stated that plaintiff was

9

unable to return to work due to her cervical spondylosis and disc herniations. (Tr. 165-68).

D. Plaintiff's Credibility Regarding Her Symptoms and Pain

When rendering a disability determination, the Commissioner must consider a claimant's subjective allegations of pain or disability. 20 C.F.R. § 404.1529(a). "The intensity and persistence of a claimant's subjective symptoms, *e.g.*, pain, is a factor in assessing the scope of any functional limitations resulting from a medically determinable impairment, considering the claimant's credibility in light of all the available evidence." Aponte v. Barnhart, No. 04-1748, 2005 WL 283209, at *10 (E.D.N.Y. Feb. 7, 2005) (internal citation omitted). "Since symptoms sometimes suggest a greater severity of impairment that can be shown by objective medical evidence alone, [the ALJ] will carefully consider any other information [that the claimant] may submit about [his] symptoms." 20 C.F.R. § 404.1529(c)(3).

In evaluating a claimant's subjective complaints, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment that the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Id. A district court must uphold an ALJ's determination not to credit a claimant's subjective complaints of pain if the finding is support by substantial evidence. Aponte v. Secretary, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). If the ALJ discounts a

claimant's subjective complaints, the reasons for doing so must be set forth with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." Miller v. Barnhart, No. 02-2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003) (internal quotations and citations omitted).

The ALJ found that plaintiff's subjective allegations "were not credible to the extent alleged." (Tr. 12). Specifically, the ALJ ruled that "the medical record simply does not establish the existence of limitations of the severity as to render the claimant exertionally unable to perform light work." (Tr. 12). The ALJ then noted that several examining physicians concluded that plaintiff could return to work with some restrictions. (Tr. 12). However, the ALJ failed to adhere to the appropriate procedure, outlined above, for evaluating a claimant's subjective complaints. In fact, the only factor to which the ALJ referred was that concerning medication. (Tr. 12) ("With regard to the effect of medications, the claimant has taken Amitriptyline and Aleve, an over-the-counter pain reliever."). Accordingly, upon remand, the ALJ must consider the other factors set forth in the Regulations.

E. Plaintiff's Non-Exertional Impairment

Plaintiff alleges that the ALJ failed to evaluate the non-exertional aspects of her right-hand tremor. An ALJ must evaluate a claimant's residual functional capacity ("RFC") to do his or her past work (1) on a "regular and continuing basis" and (2) "on a function-by-function basis." Mardukhayev v. Commissioner of Social Security, No. 01-1324, 2002 WL 603041, at *8 (E.D.N.Y. Mar. 29, 2002) (citing SSR 96-8p); 20 C.F.R. §§ 404.1567, 404.1569a. RFC is what a claimant is capable of doing despite his or her impairments. Id. § 404.1545(a). To determine whether a claimant can perform a certain category of work, the ALJ must ascertain the claimant's

exertional capacity, or strength limitations (the ability to sit, stand, walk, lift, carry, push, and pull) and non-exertional capacity. Id. § 404.1569a(a). Non-exertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." Id. § 404.1569a(c)(vi). Although the ALJ determined plaintiff's exertional capacity, (Tr. 13), he failed to ascertain her ability to perform manipulative and postural functions.

V.  Conclusion

The decision of the Commissioner is vacated and the case is remanded for further proceedings consistent with this Order. Remand is required because the ALJ inadequately developed the record with respect to Dr. Jenkins's diagnoses, failed to properly evaluate plaintiff's subjective complaints, and neglected to determine plaintiff's non-exertional capacity.

IT IS SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: April 28, 2005
Central Islip, New York